**IRBY–NORTHFACE, a joint venture, Appellant,**

v.

**COMMONWEALTH ELECTRIC COMPANY, Harrison Western Corporation-Newbery Alaska, Inc., a joint venture d/b/a Susitna Constructors and the Alaska Power Authority, Appellees.**

**HARRISON WESTERN CORPORATION–NEWBERY ALASKA, INC., a joint venture d/b/a Susitna Constructors, Cross-Appellant,**

v.

**COMMONWEALTH ELECTRIC COMPANY and the Alaska Power Authority, Cross-Appellees.**

Nos. 7632, 7649.

Supreme Court of Alaska.

April 29, 1983.

Stephen M. Ellis, William E. Moseley and Marc D. Bond, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage, for appellant Irby-Northface.

Robert J. Dickson, Atkinson, Conway, Bell & Gagnon, Anchorage, for appellee/cross-appellee Com. Elec. Co.

Donald W. McClintock and Ross A. Kopperud, Asst. Attys. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee/cross-appellee the Alaska Power Authority.

Richard L. Wagg and Lawrence T. Feeney, Faulkner, Banfield, Doogan & Holmes, Anchorage, for appellee/cross-appellant Harrison Western Corp. Newbery Alaska, Inc.

## OPINION

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and DIMOND, Senior Justice.*

COMPTON, Justice.

The single issue that must be addressed to resolve this appeal and cross-appeal is whether a joint venture qualifies as an Alaska bidder under the Alaska bidder preference statute, AS 37.05.230, when only one of its venturers would individually qualify as an Alaska bidder. For the reasons set forth below, we conclude that such a joint venture does qualify.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 25, 1982, the Alaska Power Authority ("APA") issued invitations to bid on Transmission Line Construction Contract

\* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 11, of the

\# 1 for the Anchorage-Fairbanks Intertie. The bids received by the APA that are at issue in this case were as follows:

| | |
|---|---|
| Irby-Northface | $ 28,437,328.00 |
| Susitna | $ 28,931,030.00 |
| Commonwealth (original) | $ 30,877,773.00 |
| Commonwealth (amended) | $ 28,777,773.00 |

The Alaska bidder preference statute, AS 37.05.230, specifies that state contracts for construction projects must be awarded to the "lowest responsible bidder," with the exception that "a bid shall be awarded to an Alaska bidder if his bid is not more than five per cent higher than the lowest nonresident" bid. AS 37.05.230(5) defines an Alaska bidder as a person who:

(A) holds a current Alaska business license,

(B) submits a bid for goods or services under the name as appearing on his current Alaska business license, [and]

(C) has maintained a place of business within the state for a period of six months immediately preceding the date of his bid.

Irby-Northface is a joint venture entered into by Irby Construction Co. and Northface Construction, Inc. It does not have an Alaska business license and did not maintain a place of business within the state for the six months preceding its bid submission. Northface, however, has been a licensed general contracting business in Alaska since 1977. Irby, on the other hand, is not licensed to conduct business in Alaska. It specializes in the construction of electrical transmission line systems and has built such systems in over thirty-nine states.

Susitna is a joint venture entered into by Harrison Western Corp. and Newbery Alaska, Inc. The joint venture obtained an Alaska business license before bidding on this contract. The joint venture did not, however, maintain a place of business in the state for the six months preceding its bid. Nonetheless, both corporations were licensed in Alaska and had maintained a place of business in Alaska for the six

Constitution of Alaska.

months preceding the submission of their joint bid.

The Commonwealth Electric Corp. is licensed to do business in Alaska and maintained a place of business in the state for the six months preceding its bid. Accordingly, it is the only indisputably qualified "Alaska bidder" under the statute, although it does not conduct its business exclusively in this state.

Before Irby-Northface prepared its bid, it received assurance from the APA that it qualified as an Alaska bidder on the basis that Northface individually qualified. On February 16, 1983, the sealed bids were opened and the APA subsequently issued a notice of intent to award the contract to Irby-Northface, the apparent low bidder. Susitna then commenced this action in the superior court, challenging the intended award. It argued that Irby-Northface does not qualify as an Alaska bidder because the *joint venture* does not have an Alaska business license and did not maintain a place of business in the state for the six months preceding its bid. Furthermore, the joint venture is composed of two businesses, one of which could not qualify individually as an Alaska bidder. Susitna contended that it qualifies as an Alaska bidder, even though its joint venture did not maintain a place of business in the state for the six months preceding its bid, because each of its two venturers would individually qualify as an Alaska bidder. Finally, Susitna argued that Commonwealth's bid amendment was made improperly and was therefore ineffective. Susitna's bid was lower than Commonwealth's initial bid and was within five percent of Irby-Northface's bid; Susitna therefore concluded that the contract should be awarded to it.

Commonwealth joined in Susitna's suit. It agreed with Susitna that Irby-Northface should not be treated as an Alaska bidder. It argued, however, that its bid amendment was proper and effective. Its amended bid was lower than Susitna's bid and it therefore concluded that the contract should be awarded to it.

Irby-Northface responded with several arguments. The only one relevant to this appeal is the argument that Irby-Northface does qualify as an Alaska bidder under the statute.

The parties stipulated to the facts and agreed that there are no material issues of fact precluding the court from resolving the case on summary judgment. The parties also waived any further appeal rights from the administrative decision of the APA so that the superior court's judgment would be binding.

The superior court rejected all of Irby-Northface's arguments and agreed with Susitna and Commonwealth that Irby-Northface should be treated as a nonresident bidder. It therefore concluded that it would be an abuse of discretion for the APA to award the contract to Irby-Northface because the bid of Susitna and the amended bid of Commonwealth were within five percent of Irby-Northface's bid. The court further concluded that Commonwealth's bid amendment was proper and effective. Commonwealth's amended bid was lower than Susitna's bid and the court therefore ruled that Commonwealth was the lowest Alaska bidder.

Irby-Northface appeals from the superior court's judgment, repeating the arguments it made on the motion for summary judgment. Susitna cross-appeals, contending that the superior court was correct in ruling that Irby-Northface is a nonresident bidder, but erred in ruling that Commonwealth's bid amendment was proper. Commonwealth and the APA argue in response that the superior court's judgment was proper in all respects. The APA, however, has expressly declined to take any position before this court on the proper meaning of the term "Alaska bidder."

As explained below, we disagree with the superior court's ultimate conclusion. We hold that the APA's determination was correct: Irby-Northface qualifies as an Alaska bidder under the statute. It submitted the lowest bid and it therefore should be awarded the contract. We accordingly find it unnecessary to address the other argu-

ments raised by the parties because they cannot affect the outcome of the case.

## II. DISCUSSION

Commonwealth contends that, in order for a joint venture to qualify as an Alaska bidder, the joint venture itself must fulfill the requirements enumerated in AS 37.05.-230(5), which are: (1) hold a current Alaska business license, (2) submit its bid under the name appearing on the license, and (3) have maintained a place of business within the state for a period of six months immediately preceding the submission of its bid. Susitna contends that a joint venture may alternatively qualify as an Alaska bidder if each of the venturers would individually qualify. The superior court agreed with Susitna, stating:

> The Court recognizes that joint ventures are often formed for the purpose of making a bid on a particular job. Where principals of the joint venture have maintained a place of business within the state for a period of six months immediately preceding the date of the bid, this Court concludes that AS 37.05.230(5)(c) is substantially complied with. Furthermore, where the joint venture acquires a current business license in the joint venture name prior to award of the contract, and all members of the joint venture hold a current Alaska business license at the time of the bid, this Court concludes that AS 37.05.230(5)(a) and (b) are substantially complied with.

We agree with this much of the superior court's decision and similarly hold that a joint venture may qualify as an Alaska bidder if each of the venturers would individually qualify. The court further held, however, that "*all* principals of a joint venture or any other bidder applying for a preference must have maintained places of business within the State of Alaska for at least six months prior to the bid to be eligible for the Alaska Bidders Preference." (Emphasis added.) In accordance with this analysis, Irby-Northface could not qualify as an Alaska bidder because one of the two venturers, Irby Construction, did not have an Alaska business license and had not maintained a place of business within the state for the six months preceding the joint venture's bid submission.

Before it decided to submit a bid on the contract, Irby-Northface was uncertain whether its joint venture would qualify for bidder preference. The corporations accordingly inquired of the APA as to its policy. They were informed that the APA interpreted AS 37.05.230 as permitting a joint venture to qualify for preference if any of the venturers would qualify individually as an Alaska bidder. They were further informed that the APA has consistently granted preference to joint ventures when one of the venturers qualified individually as an Alaska bidder.

The parties dispute the amount of deference this court should give to the APA's interpretation of the statute. As we recently indicated, "The independent judgment standard is used when agency expertise or the determination of fundamental policies are not involved.... However, even under the independent judgment standard ... the court should give some weight to what the agency has done, especially where the agency interpretation is longstanding." *National Bank of Alaska v. State,* 642 P.2d 811, 815 (Alaska 1982) (citations omitted).

The APA's longstanding interpretation of the bidder preference statute is based upon three factors: first, this is the same interpretation given to the statute by the Department of Administration; second, it is in accordance with the purpose of the statute; and third, it is harmonious with the only Alaska statute addressing an analogous situation. As to the first of these factors, the Department of Administration has indicated by affidavit that it interprets the statute as requiring that preference be given to a joint venture when any one of the venturers qualifies as an Alaska bidder "in order to accomplish the objectives of insuring that Alaskan firms receive a preference." The Department notes that "a more literal interpretation would result in joint ventures of Alaskan firms not receiving the

bidder preference—a result clearly not intended by the statute."

Turning to the second factor relied upon by the APA, the purpose of the statute, it is clear that the statute's purpose is to give Alaskan businesses a competitive chance with nonresident businesses in the award of state contracts. We need not and do not decide whether this is a constitutional purpose and whether the statute is reasonably related to that purpose. We do hold, however, that the APA's interpretation of the statute is the most consonant with that purpose.

As a practical matter, an Alaskan business may be unable to bid on a contract by itself and may be unable to find another Alaskan business with which to associate on the bid. The Alaskan business may thus be compelled to associate with a nonresident bidder. The only means by which the legislative purpose of giving a preference to the Alaskan business can be fulfilled under these circumstances is by granting a preference to the entire joint venture. The mere fact that a nonresident bidder is accordingly also given preference does not make this interpretation unreasonable. When the bidder is a joint venture comprised of one corporation that would qualify for preference and another corporation that would not, a conflict in purpose arises. On the one hand, the legislature has indicated that nonresidents are not to be given preference, but on the other hand, it has also indicated that qualifying corporations are to be given preference. Under these circumstances, we believe the paramount interest is that qualifying corporations be given preference, which can only be accomplished by giving preference to the entire joint venture. As one commentator notes:

> Chancellor Kent made a classic observation that: "In the exposition of a statute the intention of the lawmaker will prevail over the literal sense of the terms; and its reason and intention will prevail over the strict letter...." If upon examination the general meaning and object of the statute is inconsistent with the literal import of any clause or

section, such clause or section must, if possible, be construed according to that purpose.

2A C. Sands, Sutherland Statutory Construction § 46.05, at 57 (4th ed. 1973) (footnotes omitted). Accordingly, we conclude that the APA's interpretation of the statute is the proper one.

This conclusion is supported by the third factor relied upon by the APA. The APA notes that there is only one statute addressing an analogous situation, AS 08.18.011. This statute provides as follows:

> It is unlawful for a person to submit a bid or work as a contractor until that person has been issued a certificate of registration by the Department of Commerce and Economic Development. *A partnership or joint venture shall be considered registered if one of the general partners or venturers whose name appears in the name under which the partnership or venture does business is registered.*

(Emphasis added.) As indicated in this statute, contractors are not permitted to bid on state projects unless they are registered in this state. A situation analogous to the one posed by this case arises when a joint venture wishes to bid on a contract, but only one of the venturers is a registered contractor. The state legislature resolved this problem by holding that the joint venture may bid on the project as long as one of the venturers is a registered contractor. We believe that the legislature intends the same result to occur with respect to "Alaska bidders." We therefore conclude that the proper interpretation of the bidder preference statute is that a joint venture must be given preference if one of the venturers qualifies individually for the preference.

In its bid evaluation, the APA concluded that Irby-Northface qualified for preference, stating as follows:

> [Irby-Northface] submitted the bid on the appropriate forms, properly completed and signed, all addendums were acknowledged and bid security was furnished as required. Both joint venture partners are registered as Contractors in the State of Alaska. The bidder qualifies for Alas-

ka Bidders Preference based on the fact that one of the joint venture partners (Northface Construction) possesses a valid business license (BL # 048240) and has been in business for more than the required six months.

This evaluation is in accordance with the interpretation of AS 27.05.230 that we have made in the exercise of our independent judgment, giving some weight to the APA's longstanding interpretation. Accordingly, the contract should be awarded to Irby-Northface, the lowest responsive bidder.

The judgment of the superior court is REVERSED.

RABINOWITZ, Justice, with whom BURKE, Chief Justice, joins, concurring.

I agree with the majority's conclusion that Irby-Northface should be considered an Alaska bidder under AS 37.05.230 for the reasons stated in the opinion of the court.

I would, however, address the clear unconstitutionality of the bidder preference statute under our precedent of *Lynden Transport, Inc. v. State,* 532 P.2d 700 (Alaska 1975).[1] In *Lynden* we stated that:

> A discrimination between residents and nonresidents based solely on the object of assisting the one class over the other economically cannot be upheld under either the privileges and immunities or equal protection clauses.

*Id.* at 710. In this case, "it is clear that the statute's purpose is to give Alaskan businesses a competitive chance with nonresident businesses in the award of state contracts,"[2] as noted by the majority. Under

Alaska's equal protection clause, such a purpose does not justify a statute which discriminates against nonresidents. *Lynden,* 532 P.2d at 711.[3]

---

1. Normally it is appropriate to avoid constitutional rulings unnecessary to the decision of a particular case. In the present context, however, the constitutional defect of AS 37.05.230 is manifest and, as the state notes in its amicus brief, the disruptive consequences of uncertainty in the law are considerable in the area of public construction. Thus, in this circumstance I think it appropriate to address the constitutional issue.

2. The state and Susitna argue that the real purpose of the preference statute is to strengthen the local economy. Such an argument was advanced and rejected in *Lynden,* 532 P.2d at 709.

3. *Lynden* was decided under the federal rational basis equal protection analysis. 532 P.2d at 707, *citing, Morey v. Doud,* 354 U.S. 457, 463–64, 77 S.Ct. 1344, 1348–1349, 1 L.Ed.2d 1485, 1490 (1957). Since *Lynden,* we have established that the lowest level of scrutiny to be employed under Alaska's equal protection clause is more stringent than the minimum federal standard. *Gilman v. Martin,* 662 P.2d 120 at 125 (Alaska, 1983); *State v. Erickson,* 574 P.2d 1, 12 (Alaska 1978); *Isakson v. Rickey,* 550 P.2d 359, 362 (Alaska 1976).